UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JULIUS BRYANT, individually and on behalf
of a class of all persons and entities similarly
situated,

     Plaintiff,

     v.

NEXTGEN LEADS LLC,

     Defendant.

CASE NO.: 4:24-cv-00272-O

JUDGE REED O'CONNOR

## MOTION TO COMPEL ARBITRATION AND BRIEF IN SUPPORT

Pursuant to the Federal Arbitration Act and Federal Rule of Civil Procedure 12(b)(1), Defendant NextGen Leads LLC respectfully moves to dismiss or stay this action in favor of individual arbitration.

## SUMMARY

Plaintiff Julius Bryant filed a Class Action Complaint alleging that Defendant NextGen Leads LLC ("NextGen") caused certain telephone calls to his cellular phone in violation of the Telephone Consumer Protection Act ("TCPA") and the Texas Business and Commerce Code Section 302.101. (Compl., ECF No. 1.) Plaintiff purports to bring this action on behalf of three separate and distinct class of individuals similarly situated. (*Id*. ¶ 49.)

However, the Complaint fails to disclose that NextGen obtained Plaintiff's phone number when he submitted his information on NextGen's website, firstquotehealth.com (the "Site"). In specifically requesting the calls in question, he agreed to NextGen's terms of use, which include a mandatory arbitration provision. Therefore, Plaintiff expressly agreed to the arbitration of the claims asserted in this lawsuit and expressly waived his ability to bring a class action suit or class

arbitration.  Because Plaintiff agreed to individual arbitration of these claims, NextGen respectfully

moves the Court to dismiss or stay this action in favor of arbitration.

## FACTUAL BACKGROUND

On June 20, 2022 at or around 1:23 p.m. Central Daylight Time, Plaintiff visited the

website quote.firstquotehealth.com, which is owned and operated by NextGen to help interested

consumers obtain insurance for healthcare and other offerings (the "Visit").  (Declaration of

Chris Kelly ("Kelly Decl."), ¶¶ 7-8.)[1]  During the Visit, a submission was made on the Site that

contained Plaintiff's name (Julius Bryant), phone number (469-223-7782), address (3208

Flintridge Dr., Arlington, TX), and date of birth (          ).  (*Id.* ¶ 8.)  These records match

publicly available records regarding Plaintiff.

As reflected in the data provided by NextGen from his Site submission, the

ActiveProspect TrustedForm certificate, and Session Replay,  Plaintiff entered his personal

information and clicked on a "Get Quote" button. (*Id.* ¶¶ 8, 13, 16.)  Directly above the button

is language agreeing to be called by NextGen, along with agreement to the Site's terms of use.

During the Visit, the disclosure language above the submission button read in its entirety:

> By clicking "GET QUOTE" below, I provide my express written consent by
> electronic signature to be contacted by third parties from this list of Marketing
> Partners about my request for information including, without limitation, by
> providing to me information, offers or advertisements by telephone call or text
> message to the number(s) I have provided on this form (including any cellular
> number), even if that number is on any local, state or national "Do Not Call" list,
> sent using an automatic telephone dialer or an artificial or prerecorded voice, and
> by email or live agent. This consent is not required as a condition of making a
> purchase. Message and Data rates may apply. Message frequency varies. Text
> "STOP" to 601-202-4796 to unsubscribe or "HELP" to 601-202-4796 for help. I
> have also read and accept the Privacy Policy and Terms of Use. I understand that I
> can revoke this consent at any time. I understand that this website collected my
> phone number, email, first name, last name, address, date of birth, income and zip
> code.

---

[1] *See* Appendix in Support of Defendant's Motion to Compel Arbitration.

(*Id.* ¶ 10.)

The following is a screenshot from the Session Reply of the Visit, which accurately depicts the layout of the Site and Disclaimer on June 20, 2022:



(*Id.* ¶ 16.)

In agreeing to be bound by the "Terms of Use," clicking on that clearly noted hyperlink delivers the user to Site's terms of use.  (*Id.* ¶ 11 (the "Terms").)  A true and accurate copy of the Terms are attached as Exhibit 1 to the Kelly Declaration.

Specifically, the second paragraph of the Terms expressly provide:

**THIS AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING ARBITRATION. YOU GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS OR TO PARTICIPATE IN OR BRING CLASS ACTIONS. YOUR**

**RIGHTS WILL BE DETERMINED BY NEUTRAL ARBITRATORS AND NOT A JUDGE OR JURY.**

(Terms (emphasis in original).)   In addition, the terms contains a "**CONSENT TO ARBITRATE**" section, headlined in bold and capitalization that provides the following:

> Except where prohibited by law, You and we agree that all claims, disputes or controversies arising out of or relating to the use of this website, to the services provided by NextGen, any consents you have provided to us, or to any acts or omissions for which you may contend NextGen or its affiliates, members, officers or directors is liable relating thereto or to the information, products or services of third parties, shall be finally, and exclusively, settled by binding arbitration. The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA") and will be administered by the AAA.

(*Id*.)

NextGen has no record of receiving Plaintiff's telephone number other than from the Visit on June 20, 2022.  (Kelly Decl. ¶ 9.)

## ARGUMENT AND AUTHORITIES

### I.     Applicable Legal Standard

Section 4 of the Federal Arbitration Act (the "FAA") permits a court to compel arbitration when one party, as in this case, has failed, neglected, or refused to comply with an arbitration agreement.   *CyberXForce Corp. v. Inspira Enter. India Ltd.*, Case No. 4:23-CV-00452-O, 2023 WL 4010372, at *2 (N.D. Tex. June 14, 2023).  "The Fifth Circuit holds that this endeavor requires the trial court to decide: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Id*., citing *Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176 (5th Cir. 2016)

The FAA and the strong federal policy favoring arbitration that it evidences require courts to "rigorously enforce agreements to arbitrate."  *Mitsubishi Motors Corp. v. Soler*

4

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  Consistent with that strong federal policy favoring arbitration, "[f]ederal law counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration."  *Id.* (citing *Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  *See also DeStephano v. Broadwing Commc'ns, Inc.*, 48 F. App'x 103 (5th Cir. 2002) ("Doubts are resolved in favor of arbitrability.").

## II.    A Valid Written Arbitration Agreement Exists

As an initial matter, "it is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract."  *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003).  Pertinent here, Texas law recognizes that parties may enter into valid contracts (i.e., NextGen's Terms) through interacting with a website.  *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) ("[A] customer on notice of contract terms available on the internet website is bound by those terms.") (applying Texas law).

In this context, courts have traditionally recognized either "clickwrap" and "browsewrap" agreements.  The former consisting of a consumer affirmatively clicking a button or checking a box that states "I Agree" to the website terms, while the latter is a notice on the site that states that the user's use of the site constitutes agreement to the website's terms.  *See StubHub, Inc. v. Ball*, 676 S.W.3d 193, 200-01 (Tex. App.—Houston [14th Dist.] 2023, no pet. h.).  Here, Plaintiff's assent to NextGen's Terms more closely fits within a third hybrid category, "sign-in wrap."  "A sign-in-wrap agreement notifies users of the existence of the website's terms and conditions and advises users that they are agreeing to the terms when registering an account or signing in."  *Id*. at 201; *see also Phillips v. Neutron Holdings, Inc.*, Case No. 3:18-CV-3382-S, 2019 WL 4861435, at *4 (N.D. Tex. Oct. 2, 2019).

Courts typically enforce sign-in-wrap agreements when notice of the existence of the

terms was "reasonably conspicuous." *HomeAdvisor, Inc. v. Waddell*, Case No. 05-19-00669-CV, 2020 WL 2988565, at *4 (Tex. App.—Dallas June 4, 2020, no pet.). "It is not necessary that the agreement's terms be on the same webpage through which the user indicates his or her assent; it is enough that the page contains a conspicuous hyperlink." *Id*.

The reasoning of the court in *HomeAdvisor* is analogous. There, the court noted the following regarding the submission page:

- a large orange submit button with the phrase "By submitting this request, you are agreeing to our Terms & Conditions" written directly underneath;
- The text with the hyperlink to the terms and conditions is dark against a bright white background, clearly legible, and the same size as the nearly all of the text on the screen;
- The entire screen is visible at once with no scrolling necessary; and
- The hyperlink may be clicked, and the terms of the agreement may be viewed, before the user submits a request for service.

*Id*. at *4.

Here, the Site discloses in clear and easy-to-understand terms that a user is acknowledging that he or she "read and accept[s]" the website Terms. The operative language is black text along a white background, is *above* the submit button (obviating the need to consider if scrolling is necessary, and permits viewing the terms prior to the submission of the form. Moreover, the link to the Terms was identified through the use of a blue font and underlined, which further informs a reasonably prudent user that the terms are linked. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) ("Although the sentence is in a small font, the dark print contrasts with the bright white background, and the hyperlinks are in blue and underlined."); *May v. Expedia, Inc.*, Case No. A-16-CV-1211-RP, 2018 WL 4343445, at *3 (W.D. Tex. July 19, 2018) ("The 'Terms and Conditions' and 'Privacy Policy' were in blue, as opposed to black, font to indicate they were hyperlinks.").

6

Based on the foregoing, notice of agreement to the linked Terms were reasonably conspicuous to Plaintiff, and his decision to select the "Get Quote" button constituted his agreement to be bound by the terms, including the arbitration provision therein.

Looking to the Terms, Plaintiff was necessarily also put on notice of the arbitration provision therein. Notably, the second paragraph of the terms contains bolded and capitalized language acknowledging that "…**ALL DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING ARBITRATION**." (Terms, Ex. 1 to Kelly Decl.) Moreover, the substantive provisions regarding arbitration within the terms is headlined by a bolded and capitalized headline that states "**CONSENT TO ARBITRATE**." (*Id.*) As such, within the terms, the Plaintiff was necessarily put on notice that he was agreeing to an arbitration provision. *HomeAdvisor*, 2020 WL 2988565, *4 ("Although the terms of service are lengthy, the arbitration provision is prominently noted with bolded and capitalized print… Similar presentations have consistently been found to be conspicuous and to put the website user on inquiry/constructive notice of the website's terms of service.").

Therefore, a valid and binding agreement to arbitrate exists.

### III.   Plaintiff's TCPA Claims Fall within The Agreement to Arbitrate.

In determining the scope and enforceability of an arbitration agreement, Texas courts have recognized that parties may delegate such issues to the arbitrator for determination. *Robinson v. Home Owners Mgmt. Enterprises, Inc.*, 590 S.W.3d 518, 532 (Tex. 2019) ("when the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract and possesses no power to decide the arbitrability issue.") (cleaned up). Here, the arbitration provision clearly states, in bolded and capitalized language, that all disputes will be resolved by binding arbitration and that "you give up your right to go to court." Further, the terms specifically

state that the American Arbitration Association's rules control any dispute, and the Fifth Circuit "agree(s) with most of our sister circuits that the express adoption of [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). As such, any questions as to whether the parties' agreement includes the dispute at issue is reserved for the arbitrator.

Further, even if the Court were to independently evaluate the scope of arbitrable disputes, the Terms unequivocally state that any dispute related to (i) "the services provided by NextGen" and (ii) "any acts or omissions for which you may contend NextGen … is liable" is subject to binding arbitration. (Terms.) Here, Plaintiff asserts that a party contacted him (allegedly on behalf of NextGen) via phone calls in violation of the TCPA. (*Compl.*, passim.) Therefore, the allegations fit squarely within the scope of the parties' agreement to arbitrate.

### IV.    Dismissal Is the Proper Remedy.

The FAA provides, in pertinent part, that a court compelling arbitration "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. Despite this statutory language, "courts may dismiss a case if /retaining jurisdiction and staying the action will serve no purpose." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 613 (N.D. Tex. 2014) (cleaned up). Pursuant to established Fifth Circuit case law, dismissal is appropriate "when *all* of the issues raised in the district court must be submitted to arbitration." *Id.*, quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th

Cir.1992).[2]  NextGen respectfully requests that the Court exercise its discretion to dismiss this case upon compelling arbitration.

## CONCLUSION

For the foregoing reasons, NextGen respectfully moves to compel arbitration of this action in its entirety and dismiss this case.  In the alternative, NextGen requests that this matter be stayed pending arbitration.

Respectfully submitted,

*/s/Frank C. Brame*
Frank C. Brame
State Bar No. 24031874
The Brame Law Firm PLLC
4514 Cole Ave., Suite 600
Dallas, Texas 75205
Telephone: (214) 665-9464
frank@bramelawfirm.com

Christopher C. Wager (*pro hac vice* application pending)
Mac Murray & Shuster LLP
6525 W. Campus Oval, Suite 210
New Albany, Ohio 43054
Telephone: (614) 939-9955
Fax: (614) 939-9954
cwager@mslawgroup.com

ATTORNEYS FOR NEXT GEN LEADS, LLC

---

[2] NextGen recognizes that the Supreme Court recently ruled that when a party agrees that claims are arbitrable and requests a stay of the court proceeding, "the court lacks discretion to dismiss the suit," and instead must stay the action. *Smith v. Spizzirri*, Case No. 22-1218, --- U.S. ---, 2024 WL 2193872, at *1 (U.S. May 16, 2024).  As of the filing of this motion, neither party has requested that the action be stayed pending arbitration.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 28, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Northern District of Texas.

*/s/ Frank Brame*

Counsel for Defendant