**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| JULIUS BRYANT, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>  v.<br><br>NEXTGEN LEADS LLC<br><br>    Defendant. | Case No. 4:24-cv-00272<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION**

The Court should deny Defendant NextGen Leads LLC's motion to compel arbitration because the agreement to arbitrate is not clear and conspicuous and therefore is not enforceable and also because Mr. Bryant never visited the website he is alleged to have visited and therefore did not enter into the agreement to arbitrate as an initial matter.

Plaintiff's claims arise from unsolicited telemarketing calls made by NextGen Leads LLC to solicit business for former defendant SolidQuote and its automobile insurance offerings. Despite this fact, Defendant claims that Plaintiff provided his consent to arbitrate any disputes as between them, including this one arising out of illegal telemarketing calls unrelated to the website alleged to be visited, which was a website for *health* insurance that *doesn't even name SolidQuote*. The Defendant's evidence of an agreement to arbitrate is also internally contradictory, claiming, for example, that the Plaintiff purportedly submitted an address in Texas but providing a screenshot showing that the Plaintiff allegedly typed out an address in Alabama, where the Plaintiff does not live. To be sure, in discovery, the Plaintiff will explore why this disputed evidence proves that he did not, as a factual matter, consent to arbitration in this matter if it gets this far. As the Supreme Court recently held in *Coinbase, Inc. v. Suski*, No. 23-3, 2024 WL 2333424, at *3 (U.S. May 23, 2024), the Court, not the arbitrator, must evaluate the evidence to determine if the Plaintiff did, in fact, agree to arbitrate.

But this Court need not even address the factual question of whether or not the Plaintiff agreed to arbitrate, however, because the agreement is *prima facie* invalid and unenforceable under the contract law of Texas, where Plaintiff resides and this lawsuit is proceeding, and California and Delaware, where the purported agreement to arbitrate is allegedly to be performed and interpreted. Notwithstanding the fact that Mr. Bryant never visited the website alleged, and therefore posing a question of arbitrability reserved for this Court, not to an arbitrator, the

reliance on the website's terms and conditions to establish arbitrability as an initial matter is unenforceable and void *ab initio*. This is so because the website does not make conspicuous the agreement to arbitrate, thus rendering it unenforceable.

## I. BACKGROUND

This case involves a campaign by Defendant NextGen Leads LLC to market *automobile insurance* services for SolidQuote Insurance Services, LLC through the use of telemarketing calls to numbers on the National Do Not Call Registry in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (hereinafter referred to as the "TCPA"). The recipients of NextGen's illegal calls, which include Plaintiff and the proposed Class, are entitled to damages under the TCPA for this illegal conduct.

NextGen Leads LLC seeks to avoid this lawsuit by compelling arbitration based on the terms and conditions for a *health insurance* website it operates and claims the Plaintiff visited, FirstQuoteHealth.com, a website that does not even *list* SolidQuote as a "Marketing Partner." To be clear, Mr. Bryant denies this visit and in fact has never been to this website, and this fact, together with the logical inconsistencies in the Defendant's own evidence relied upon, provides an independent basis for denying the Defendant's motion.[1]

The information submitted to this Court in support of Defendant's claims that the Plaintiff's suit is subject to arbitration contains inaccurate, internally contradictory information about Mr. Bryant and the purported agreement to arbitrate. Indeed, as Mr. Bryant explains in his affidavit, he confirmed that he has not been on the website prior to the date he learned of the website from the affidavit and in any event would not have agreed to such an arbitration

---

[1] *See* Exhibit A, Declaration of Julius Bryant ("Bryant Dec.").

provision if such provision was disclosed to him. *Id.* at ¶ 8, 9, 10, 11. What's more, the screenshot in the Defendant's motion and affidavit show that the information purportedly entered on the form listed "Alabama." Defendant then claims that the information submitted was somehow magically changed to reflect the great State of Texas, where Plaintiff lives. Indeed, the information that FirstQuoteHealth has to confirm Mr. Bryant visit to the website is simply incorrect biographical information about him. But even this information is incorrect because the screenshot reflects that the information allegedly *typed* into the form was Arlington, Alabama, 76017, which is not even a correct zip code or where the Plaintiff lives. *Id.* at ¶ 13, 14, 15.

## II.     LEGAL STANDARD

In evaluating a motion to compel arbitration in a TCPA case, "The Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 et seq., governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. *See id*. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"). Courts in the Fifth Circuit employ a two-prong inquiry when determining a motion to compel arbitration under the FAA. *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). First, the Court must determine if, as a factual matter, the parties agreed to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, (1985) Second, the Court must determine if "legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). A Court may only compel arbitration when *both* prongs are satisfied.

In evaluating the first prong, whether there exists enough evidence to support the existence of an agreement as a factual matter, "'if the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.'" 9 U.S.C. § 4. Although the Fifth Circuit has "not articulated precisely what quantum of evidence is necessary to prove or disprove the existence of an agreement to arbitrate," it has indicated that an unequivocal denial of an agreement to arbitrate, coupled with "some evidence" supporting that position, likely suffices to entitle the party to a jury trial under Section 4. *Gallagher v. Vokey*, 860 F. App'x 354, 357 (5th Cir. 2021). And this Court has indicated that the majority of sister circuits use a summary judgment standard to determine if, taken in the light most favourable to the party opposing arbitration, there are sufficient undisputed facts supporting an enforceable agreement to arbitrate. *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443–45 (N.D. Tex. 2019).

### III. DEFENDANT'S MOTION TO COMPEL ARBITRATION FAILS UNDER BOTH PRONGS OF THE *FLEETWOOD* TEST

#### A. Prong one fails because Plaintiff factually denies having agreed to arbitrate, creating genuinely disputed facts entitling him to a jury trial on the issue.

"Arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). The Supreme Court has held time and time again that, despite the liberal policy favouring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.* As the party seeking to arbitrate, the Defendant bears the burden of demonstrating, at the same level as at summary judgment, not only that a valid arbitration agreement exists but also that the *Plaintiff himself,* and not some third party, agreed to be bound by the clause. *Jackson*, 389 F. Supp. 3d at 443; *accord Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). As explained above, the Defendant is not entitled to invoke any arbitration clause because the

factual question of whether the Plaintiff even agreed as a matter of contract is called into issue. The Plaintiff denies having visited the website or submitted his information at all, and thus denies having assented to arbitration as an initial matter. The facts here, as will be further developed through discovery, indicate that he did not, entitling him to a jury trial on the issue.

To be clear, the Plaintiff unequivocally denies ever having agreed to arbitrate. He has supported that unequivocal denial by pointing out myriad of factual and logical inconsistencies in the agreement, disproving the factual basis for having made it. These include the following:

- The purported agreement to arbitrate appears on a website for health insurance, but the calls the Plaintiff received were for car insurance. Bryant Dec. ¶ 16.
- The purported agreement to arbitrate is internally inconsistent, with the screenshot indicating that the Plaintiff allegedly typed in his state as "Alabama" but the data supplied indicates that "Texas" was typed in as the state. Bryant Dec. ¶ 13.
- The list of "Marketing Partners" on the website does not list SolidQuote, the entity for whom NextGen placed the calls. Bryant Dec. ¶ 17.
- The ZIP code for Arlington Alabama is 36722, not 76017. Bryant Dec. ¶ 17.
- The webform screenshot does not show a "dropdown" option for the "State" field, which means the Plaintiff would have had to manually type in his state as Alabama. Bryant Dec. ¶ 13.
- The Plaintiff has resided in Texas for over 30 years and would have no reason to type "Alabama" into a web form. Bryant Dec. ¶ 15.
- The Plaintiff was never informed that his claims were subject arbitration and would never have agreed to those terms. Bryant Dec. ¶ 17–19.

Consistent with the "general proposition" that "a contract cannot bind a non-party," *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9 (1st Cir. 2014), "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). This term, the Supreme Court addressed the proper procedure to follow when, as here, conflicts arise as to the enforceability of purported arbitration contracts, such as when one of the contracts is facially subject to an arbitration provision and one which is not. *Coinbase, Inc. v. Suski*, No. 23-3, 2024 WL 2333424, at *3 (U.S. May 23, 2024). The Supreme Court held that the first question in any

arbitration dispute must be what the parties agreed to. *Id.* The Supreme Court clarified that *this* "fundamental" question is one for the *Court*, not the arbitrator, to decide, and is driven by contractual interpretation principles under state contract law. *Id.*

In *Coinbase*, the Supreme Court reaffirmed that "where, as here, a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Id.* at *5 (*quoting Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 71 (2010)). The Court went on to explain that in such cases, just like the case here, "basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute." *Coinbase*, 2024 WL 2333424, at *3 (quoting *Rent-A-Ctr.*, 561 U.S. at 71 for the proposition that "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that [arbitration] agreement.").

Here, the Plaintiff has submitted an affidavit of his own to disprove his agreement to any purported arbitration agreement. That declaration, attached as Exhibit A, makes clear that the Plaintiff never visited the FirstQuoteHealth website on the date he is alleged to have done so. Nor does the fact that the Defendant submit a purported screenshot of the website visit at all evidence that a website visit took place. In fact, as described, the website screenshot is logically inconsistent and proves nothing because it shows the information was submitted with the state of Alabama and listing an incorrect ZIP code. Defendant has no explanation for how that information magically got changed to reflect Texas, and was likely fabricated by the Defendant at some later stage. Counsel for the Plaintiff could just as easily have visited the website and submitted a purported agreement to arbitrate in the name of Homer Simpson and then changed

the information after the fact to show a fictional cartoon character agreed to arbitrate.

What's more, the information purportedly captured by the FirstQuoteHealth website does not even contain accurate information about Mr. Bryant, thus rendering any purported agreement to arbitrate ineffective because it names the wrong party. Indeed, as Mr. Bryant explains in his affidavit, he does not recognize the website and only visited it after being informed of its existence by his counsel. Bryant Dec. at ¶ 9, 10. The information that the website allegedly has to confirm Mr. Bryant visit to the website is simply incorrect biographical information about him obtained from some public source and he would never type in the inconsistent information alleged, let alone agree to arbitrate. Bryant Dec. at ¶ 13, 14, 15, 19.

Moreover, it should also be noted that the party for whom NextGen was calling, SolidQuote, was previously a Defendant in a sister case. SolidQuote admitted it hired NextGen to place the calls but said nothing about FirstQuoteHealth, the website visit, or proposed agreement to arbitrate arising therefrom. Nor could it, because the FirstQuoteHealth website, which purportedly claims to sell health insurance, does not even list *SolidQuote* as a marketing partner or relate in any way to Defendant's campaign for SolidQuote to sell auto insurance. The importance of the website failing to list SolidQuote is fatal to any arbitration claim.

TCPA consent rules require naming a specific *seller*, like SolidQuote, on whose behalf consent is obtained. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 at ¶33 (2012). In other words, TCPA consent must name the company (like SolidQuote) whose product is being sold, in addition to being logically and topically related to the product being sold. It follows that, if the website did not provide any consent to receive telemarketing calls selling SolidQuote's auto insurance products and services as an initial matter, any purported arbitration language in the website's terms and conditions does not apply to TCPA

disputes involving calls from that seller (let alone for unrelated auto insurance), nor could it, because the consent must be obtained to receive such telemarketing calls *from a specific seller*. *See Larson v. Harman Mgmt. Corp.,* No. 1:16-cv-00219-DAD-SKO, 2016 U.S. Dist. LEXIS 149267, *5-7 (E.D. Cal. Oct. 26, 2016) (quoting 47 C.F.R. § 64.1200(f)(8)). Based on its submissions to the Court, Defendant asserts that a purported internet visit to a website that *does not even mention*, as legally required, the entity on whose behalf the calls were placed, somehow constituted an agreement to arbitrate disputes based on calls placed on behalf of that entity.

The rationale for this rule, especially in the arbitration context, is obvious. Without naming a specific seller, a company could rely on an arbitration agreement purportedly only between the company and the consumer to extend to any vendor with which that company did business and the customer also had a dispute and turn the entire arbitration process into one of coercion and "gotcha" tactics. And without being logically and typically related to the goods and services being offered, a large conglomerate could rely on an arbitration agreement for one product or service to extend to people even merely using related products. *Cf. Starling v. OnProcess Tech., Inc.*, No. 1:23-CV-10949-JEK, 2024 WL 1258501, at *5 (D. Mass. Mar. 25, 2024) (denying motion to compel arbitration and holding that non-signatory family member was not bound by arbitration agreement despite being listed as an alternat contact on account).

Ultimately, Plaintiff Bryant never agreed to the arbitration agreement Defendant now seeks to enforce and, therefore, the Court should deny Defendant's motion to compel arbitration. *See, e.g., Hazlett v. Family Dollar Stores of Tenn., Inc.,* No. 3:20-cv-00804, 2021 U.S. Dist. LEXIS 31225, at *20 (M.D. Tenn. Feb. 19, 2021) ("In short, the court finds that the plaintiff's Declaration, if true, shows that she had no reason even to know that she was signing an arbitration agreement. Consequently, it creates a material factual dispute as to whether there

was "a meeting of the minds in mutual assent" to the terms of the Arbitration Agreement Arbitration Agreement, as required to form a contract."). *Coinbase* confirms this Court and not an arbitrator retains jurisdiction to and must evaluate the agreement to arbitrate applying state law. This Court must hold the same.

      **B.**    **The purported agreement to arbitrate is legally defective, which forecloses on the arbitrability of the Plaintiff's claims.**

As outlined by the Supreme Court in *Coinbase*, the Court need not even embark on the aforementioned factual dispute of whether or not the parties agreed to arbitrate because this Court has independent grounds to hold the arbitration agreement unenforceable both as a matter of federal law under the TCPA and as a matter of state contract law because it is impermissibly inconspicuous and unconscionable.

Start with federal law under the TCPA. The purported agreement to arbitrate based on alleged consent to contact the Plaintiff is legally defective, as described above, because it fails to name the specific seller or services being sold here, that is, car insurance quote services from SolidQuote. As a matter of law, the FirstQuoteHealth website's purported "opt-in" language fails to provide the "prior express written consent" required by the TCPA because it does not clearly authorize calls made on behalf of SolidQuote. Without legally sufficient consent under the TCPA, there is no consent for an arbitrator to arbitrate. Indeed, another court examined similar defective "opt in" language on a similar website and held that such language does not constitute prior express written consent under the TCPA. *See Williams v. Pillpack, LLC,* 2021 U.S.Dist. LEXIS 27496 *14-15 (W.D.WA. February 12, 2021) (certifying a TCPA class, rejecting defence claim that individual issues relating to consent would predominate, and noting the TCPA disclosure relied upon did not disclose the defendant as the "seller").

Recognizing the strict requirement that a consumer must be specifically informed of any

entity that is going to be contacting a number that a consumer has placed on the National Do Not Call Registry, a Court recently entered partial summary judgment *on behalf of a plaintiff* under similar circumstances in *Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS1, 2021 U.S. Dist. LEXIS 245059, at *20-25 (D. Mass. Dec. 3, 2021):

> Even if plaintiff had visited the Snappy Auto website … [t]he consent form that defendant claims supplied plaintiff's consent was not TCPA-compliant. First, the form does not mention defendant or its clients by name. Defendant cites its 30(b)(6) deponent's statement that the phrase "marketing partners" on that form referred to defendant, but that is contradicted by his further testimony that defendant does not have a contract with the company (AutoInsurQuotes.com) named in the consent form and that he—as defendant's senior manager of data partnerships—had never heard of the company. The form also contained a telephone number for an entity that was not associated with Snappy Auto, AutoInsurQuotes.com, or defendant. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (stating that prior express consent "must be evidenced by a signed, written agreement *between the consumer and seller"* (emphasis added)); *Mattson v. New Penn Fin.*, No. 3:18-cv-00990, 2020 U.S. Dist. LEXIS 197955, at *12 (D. Or. Oct. 25, 2020) ("[T]he regulations promulgated under the TCPA require the consumer's prior express consent to receive calls from the [*24] *specific* telemarketer that makes the call before the telemarketer can call a number listed on the DNCR." (emphasis added) (citing 47 C.F.R. § 64.1200(c)(2)(ii)))…. Accordingly, even assuming plaintiff had visited the website, no reasonable jury would credit defendant's claim to be a "marketing partner" with the company listed on the consent form.

Therefore, even if the Court were to ignore Defendant's complete lack of evidence of a visit by the Plaintiff to the website FirstQuoteHealth.com, there is no basis to conclude that the consent obtained on that website was legally sufficient and therefore there is no dispute as to consent, including factual issues of if the Plaintiff consented or not, for the arbitrator to arbitrate.

Second, and most importantly, the agreement to arbitrate is invalid and void *ab initio* because it is not sufficiently conspicuous in derogation of California and Delaware state contract law, as reflected by the purported agreement's choice of law rules and place for performance, as well as contrary authority in Texas. The hallmark of the enforceability of a clickwrap agreement is the conspicuousness of its notice. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30

(2d Cir. 2002). An offeree is "not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Id.* Here, nothing in the on the website indicates the fact that the Terms and Conditions contain an agreement to arbitrate *at all*. To be sure, they do indicate that Terms and Conditions may *exist*, but the existence of ordinary boilerplate terms does not point to the *significant* fact that the terms *contain an arbitration clause*, thus putting a consumer on inquiry notice to actually read the tremendously significant language in what might otherwise be standard boilerplate terms.

      Contrary to the Defendant's assertions, a survey of circuits from across the nation are in *unanimous* agreement that a link to terms and conditions containing an arbitration provision is insufficient to contractually bind the consumer *unless* the language *also makes clear* that the terms contain such a provision or the consumer otherwise acknowledges having read the terms, such as by checking a box after scrolling through them. This case is remarkably similar to *Arnaud v. Doctor's Assocs. Inc.*, 821 F. App'x 54, 56 (2d Cir. 2020), where the Second Circuit held that a disguised and cluttered link to terms and conditions was insufficient to give notice of a "clickwrap" arbitration provision. *Doctor's Assocs.* is one of many cases in the TCPA and consumer protection context where courts reject hybrid clickwrap agreements, particularly when their existence is buried or otherwise obscured. The Dallas Court of Appeals' decision in *HomeAdvisor, Inc. v. Waddell*, the chief case cited by the Defendant on this point, is at odds with the Second Circuit's holding in *Arnaud* and its progeny as well as the Houston Court of Appeals' later decision in *StubHub, Inc. v. Ball*, 676 S.W.3d 193, 202 (Tex. App. 2023), a case that is cited by the Defendant but which actually *supports the Plaintiff*. There, the Court held an agreement to arbitrate based on a link to terms and conditions was *unenforceable* because it did not contain "reasonably conspicuous notice of the User Agreement's terms," including that to arbitrate. *Id.*

A meeting of the minds requires that the parties have an understanding of the terms to which they have agreed. That necessarily requires reasonable notice to each contracting party of key contractual terms like arbitration clauses. Significantly, both Delaware and California law, the state indicated by the agreement's choice of law rules and the place for performance, respectively, *both* follow the majority view, as well as that of the Houston Court of Appeals, that a mere link to terms and conditions is not conspicuous enough to give notice of an agreement to arbitrate. Terms and conditions containing agreement to arbitrate must provide at least inquiry notice to the consumer to prompt them of the fact that the agreement is subject to an arbitration provision. *Berman v. Freedom Fin. Network, LLC*, No. 18-CV-01060-YGR, 2020 WL 5210912, at *3 (N.D. Cal. Sept. 1, 2020), aff'd, 30 F.4th 849 (9th Cir. 2022), and aff'd, 30 F.4th 849 (9th Cir. 2022); *see Noble v. Samsung Elecs. Am., Inc*, 682 F. App'x 113, 116 (3d Cir. 2017) ("The terms were buried in a manner that gave no hint to a consumer that an arbitration provision was within."); *see also James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017).

Apart from the infirmity with the link itself merely incorporating by reference a purported agreement to Terms and Conditions, the language does not even provide inquiry notice of an arbitration provision to a consumer. Indeed, just like in *Rojas v. GoSmith, Inc*., "Defendant did nothing that drew attention to [the link] . . . [and] [n]o evidence shows any indication that Plaintiff was advised to read the entirety of the webpage." 2020 WL 831585, at *4 (N.D. Ind. Feb. 20, 2020). Like in *Rojas*, the language on the website is hardly clear and does not place a reasonable person on even inquiry notice that they are agreeing to binding arbitration.

Courts in the TCPA context have uniformly rejected such hide-and-seek "gotcha" tactics as a method of obtaining consent to arbitrate TCPA claims. *See, e.g.*, *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836, 841 (S.D. Ohio 2021) (holding that due to the inconspicuous nature of the

website's terms of use, plaintiff had neither actual nor constructive notice of arbitration provision and therefore could not assent to it); *Schuchmann v. Great Am. Power, LLC*, No. 3:23-CV-1604, 2024 WL 219267, at *4 (M.D. Pa. Jan. 19, 2024) (denying motion to compel arbitration in a TCPA case when "the record as developed so far does not indicate that Plaintiff had been informed of the arbitration clause."); *Shultz v. TTAC Publ'g, LLC*, No. 20-CV-04375-HSG, 2020 WL 6937818, at *4 (N.D. Cal. Oct. 26, 2020) ("Although the hyperlink to the Terms and Conditions is in light blue, it is not underlined, highlighted, in all caps, or otherwise set off from the page."); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 466 (S.D.N.Y. 2017) (hyperlink coloured in light blue insufficient to provide notice); *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019) ("Users cannot be reasonably expected to click on every word of the sentence in case one of them is actually a link."); *Berman*, 2020 WL 5210912 (N.D. Cal. Sept. 1, 2020). Just like in the aforementioned cases, the typeface of the consent language at issue here is substantially similar, not requiring the customer to check a box to signify their assent and including only a link to terms and conditions without making clear that those terms contain arbitration provisions at all.

Because any alleged agreement to arbitrate was not conspicuous, was hidden on a different webpage containing terms and conditions, was not pointed out, and because the terms of the agreement itself are so weighty, this Court must conclude that the agreement is void because it is not conspicuous, as well as substantively and procedurally unconscionable.

## IV.   CONCLUSION

For all of the foregoing reasons, Defendant's motion should be denied in its entirety.

RESPECTFULLY SUBMITTED AND DATED this June 11, 2024.

        */s/ Anthony Paronich*
        Anthony Paronich
        Email: anthony@paronichlaw.com
        PARONICH LAW, P.C.
        350 Lincoln Street, Suite 2400
        Hingham, MA 02043
        Telephone: (617) 485-0018
        Facsimile: (508) 318-8100